# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| TIMOTHY R. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:06CV207-HEH |
| | ) |
| SCOTT & STRINGFELLOW, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
### (Granting Defendant's Motion to Confirm and Denying Plaintiff's Motion to Vacate the Arbitration Award)

This is essentially a contract dispute involving the terms and enforceability of a loan agreement executed in connection with Plaintiff's employment with Defendant. By virtue of his position as a securities dealer, Plaintiff Timothy R. Martin agreed that all employment-related disputes would be resolved by arbitration. Therefore, on Defendant's motion, this Court entered an Order on June 6, 2006, staying proceedings and directing that all claims be submitted to arbitration pursuant to the NASD Code of Arbitration Procedure.[1] Those proceedings have been completed and a final award issued by the arbitration panel in favor of the defendant. The defendant now asks this Court to confirm the arbitration award. Plaintiff, on the other hand, moves the Court to vacate the award on the grounds that the panel's decision is infected by fraud, perjury, and misconduct. Both parties have submitted memoranda of law, with accompanying exhibits, supporting

---

[1] NASD is now known as the Financial Industry Regulatory Authority, or FINRA.

their respective positions.[2] Because the facts and legal contentions are adequately presented before the Court and argument would not aid in the decisional process, the Court will dispense with oral argument.

In September 2004, the plaintiff was hired by Defendant Scott & Stringfellow, Inc. ("S&S") as a salesman in its BB&T Capital Markets Division. Plaintiff's assigned area of specialization was transactions involving the sale of distressed commercial mortgage-backed securities. Under the clear terms of his employment, Plaintiff was an at-will employee with no defined period of employment, terminable at the pleasure of S&S with or without cause.

As part of his compensation package, Plaintiff signed an employee forgivable loan agreement ("the Agreement") on September 10, 2004. The Agreement expressly reiterated that Plaintiff's employment with S&S was at-will, stating that the "employee may resign at any time and the firm may terminate employee at any time, with or without cause." The Agreement, which is central to the arbitration proceedings, provided that S&S would make an interest-free loan to Plaintiff in the amount of $400,000, which may be incrementally forgiven over a period of seven years. It specified that forgiveness was contingent upon a number of factors, including production revenue and continued employment with the firm. If Plaintiff terminated employment with S&S for any reason other than death, disability, or a change in corporate control, he would be required to

---

[2]Plaintiff Timothy R. Martin was represented by counsel during the arbitration proceedings. His counsel has since withdrawn and Plaintiff is now proceeding *pro se.*

repay the unforgiven portion of the loan.

In time, at Plaintiff's request, his responsibilities were expanded to include not only sales, but also purchase of high-risk, mortgage-backed securities. This provided an increased opportunity for profits to Plaintiff but, conversely, exposed S&S to greater potential losses. Consequently, Plaintiff was advised that his profits on bond sales could be offset by losses from nonprofitable transactions. According to the evidence, this proposal was not well-received by Plaintiff. Despite his $1.3 million in compensation the previous year, he allegedly became disenchanted and, in the view of S&S, insubordinate.

Subsequently, S&S restored Plaintiff to the original duties for which he was hired, namely, institutional sales of securities. This shift of responsibility eliminated the objectionable requirement that a portion of Plaintiff's compensation be withheld as a potential offset for losses. S&S also agreed to forgive certain losses already incurred by Plaintiff in capital transactions. These arrangements apparently failed to placate Plaintiff, who on February 20, 2006, through counsel, advised S&S that he wanted to work out a separation agreement. S&S responded that it wished to retain Plaintiff in its employ and suggested several options for resolving the differences Plaintiff was experiencing with his supervisors. S&S agreed to either transfer Plaintiff to Richmond or assign him to a different supervisor.

Plaintiff opted to relocate to the Richmond office. Within days, a dispute arose between Plaintiff and his new supervisor concerning access to certain technology.

3

Dissatisfied with his supervisor's response, Plaintiff chose to quit his employment just four days after his relocation to the Richmond office. Pursuant to the Agreement, Plaintiff was obligated to pay the unforgiven balance. This lawsuit followed.

The action filed in this Court contained four claims, two of which are central to the arbitration proceedings. Plaintiff sought declaratory relief from reimbursing S&S for the unforgiven portion of the forgivable loan agreement, on the ground that he had been constructively discharged from his position in breach of the terms and conditions of the Agreement.[3] Furthermore, Plaintiff maintained that he was entitled to damages for his constructive termination, in violation of the Agreement. Defendant counterclaimed for payment of the loan balance.

Pursuant to the conditions of Plaintiff's employment as a securities dealer, this Court directed the parties to proceed with arbitration. The arbitration hearing was originally scheduled for July 16, 2007. Six weeks prior to the commencement of the hearing, Plaintiff filed a motion to amend his complaint by adding an additional party defendant and claims of actual and constructive fraud against S&S. The arbitration panel, exercising its discretion, denied Plaintiff's motion to amend.

On the eve of the arbitration hearing, Plaintiff filed a Petition in Bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida. This had the effect of staying all arbitration proceedings. Plaintiff's Petition in Bankruptcy was ultimately dismissed

---

[3]Plaintiff also requested declaratory and injunctive relief with respect to a noncompete clause in the Agreement.

4

for failure of prosecution. The arbitration hearing was conducted on December 10–12, 2007, and an award in S&S's favor was issued on January 8, 2008.

Plaintiff now urges this Court to vacate the arbitration award on several grounds. Plaintiff contends that the arbitration panel engaged in misconduct by denying him leave to amend his complaint to add a new party and new claims. Plaintiff further maintains that the arbitration panel engaged in misconduct by refusing to admit two audio tapes containing allegedly unlawfully intercepted communications by a former employee of S&S.

Plaintiff also asserts that an S&S sales manager committed perjury in denying that he had agreed that Plaintiff could receive a $10,000 loan from S&S to cover expenses incurred during his divorce. Moreover, Plaintiff alleges that counsel for S&S committed perjury in connection with this witness.

S&S initially responds by pointing out that at the conclusion of the arbitration proceedings, Plaintiff, through counsel, stated that he had a full and fair opportunity to be heard. With respect to the panel's denial of Plaintiff's request for leave to amend his complaint to add a new party and new claims, S&S argues that such decisions reside within the discretion of the panel. Here, the request was untimely—six weeks before the hearing and after the close of discovery.

S&S also contends that Plaintiff's argument that the panel engaged in misconduct by refusing to admit as evidence two audio tapes of surreptitiously intercepted

conversations is equally unavailing. S&S maintains that these tapes were unlawfully obtained and were the subject of an injunction issued by a North Carolina state court. Furthermore, a witness with first-hand knowledge of the contents of the tapes was permitted to testify at the arbitration hearing. Plaintiff was afforded an opportunity to thoroughly cross-examine the witness on the conversations contained in the tapes. Consequently, there was no prejudice to Plaintiff even if the panel erred.

Lastly, S&S vigorously contests Plaintiff's assertion that an S&S sales manager committed perjury when he testified that he had not agreed to support Plaintiff's request for a $10,000 personal loan. Aside from falling short of perjury, the sales manager's testimony had no direct bearing on any of the issues in the arbitration proceedings.[4]

As the United States Court of Appeals for the Fourth Circuit recently observed in *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345 (4th Cir. 2008),

> any judicial review of an arbitration award is "extremely limited," and is, in fact, "among the narrowest known to the law." As we have consistently recognized, a reviewing court is entitled to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."

*Id.* at 349 (citations omitted); *see also Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492

---

[4] Even if the Court were inclined to look behind the findings of the arbitration panel as to the credibility of this witness, it could not do so in the absence of a transcript of the proceedings.

F.3d 520, 527 (4th Cir. 2007).

Courts are not free to overturn an arbitral result because they would have reached a different conclusion if presented with the same facts. *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994). The grounds upon which a court may vacate an arbitral award has been limited by Congress to four:[5]

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*

An arbitration award can also be vacated on the common law ground that it evidences a manifest disregard of the law. *Three S Del.*, 492 F.3d at 527. To demonstrate that an arbitrator has manifestly disregarded the law, a party "is required to show that the arbitrators were aware of the law, understood it correctly, found it applicable to the case

---

[5] These four grounds track those set forth in the Federal Arbitration Act, 9 U.S.C. § 10(a).

before them, and yet chose to ignore it in propounding their decision." *Remmey*, 32 F.3d at 149.

On careful review, this Court finds no evidence of corruption, fraud, partiality, or misconduct on the part of the arbitration panel. In fact, at the conclusion of the proceedings, counsel for Plaintiff acknowledged that his client had received a "full and fair opportunity to be heard." Plaintiff, now proceeding *pro se*, casts his objections to the panel's decision in terms of fraud and misconduct. In effect, Plaintiff invites this Court to conduct a *de novo* review of the panel's factual findings and procedural decisions. This Court declines to do so.

The decisions at issue are appropriate and logical exercises of the panel's discretion. There is nothing in the record to support Plaintiff's contention that the panel abused its discretion, or engaged in misconduct, in denying him leave to add a new party and new claims six weeks before a hearing on the merits and after the close of discovery. Similarly, no fault can be found in the panel's decision to exclude audiotapes that were unlawfully intercepted. And lastly, the mere fact that a witness has a recollection of events which differs from that of the plaintiff is no basis for a finding that perjury was committed. Assessing the credibility of witnesses is a function that lies peculiarly within the province of the arbitration panel.

In the final analysis, the Court is of the opinion that the arbitration panel rendered a fair decision based strictly on the law and the evidence presented. Finding that the

panel properly did their job, the Court will grant Defendant's Motion to Confirm Arbitration Award and deny Plaintiff's Motion to Vacate the Arbitration Award.

An appropriate Order will accompany this Memorandum Opinion.

/s/ _____
United States District Judge

Date: March 13, 2008
Richmond, VA